PRR:blj                          7926-5002                          #1440658

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No.  05 C 5945 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| BRIAN M. BACH, DONALD BACH, | ) | Magistrate Judge Valdez |
| CAM GOLF, INC., and ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

### CAM GOLF'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS & MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE EXCLUSIONS

Now come Defendants/Counter-Plaintiffs, Cam Golf, Inc., Donald Bach and Brian M. Bach (collectively "Cam Golf"), and for their Opposition to Plaintiff's Motion for Judgment on the Pleadings and Cross Motion for Summary Judgment on the Exclusions, states as follows:

### INTRODUCTION

This declaratory action involves the respective rights and duties between Allied Insurance Company ("Allied") and its insured, Cam Golf, arising out of claims for insurance coverage for alleged copyright infringement, trademark infringement and dilution, unfair competition, false designation of origin, trade dress violations, and common law deceptive trade practices. Allied's motion relies exclusively upon three exclusions within its policy issued to Cam Golf.[1]

---

[1] Allied's motion does not dispute that the allegations within the underlying complaint constitute "advertising injury" as covered by the policy. In point of fact, the coverage grant within the policy makes clear that advertising injury coverage including the "use of another's advertising idea in your "advertisement" or "infringing upon another's copyright, trade dress or slogan in your advertisement" are covered. Indeed, the underlying complaint contains specific allegations of copyright, trade dress and trademark infringement and the use of another's advertising idea in Cam Golf's advertisement.

As will be demonstrated below, the three exclusions relied upon by Allied are inapplicable to the instant case and Allied owes a defense to Cam Golf with respect to the underlying action.

### *STANDARD OF REVIEW*

Curiously, Allied's motion is premised upon F.R.C.P. 12(c)-Judgment on the Pleadings. Along these lines, Allied's own motion makes no reference to how a litigant can prevail on such a motion. Indeed, the standard is high. Generally, courts will review a motion pursuant F.R.C.P. 12(c) using the standard applicable to dismissals under 12(b)(6) for failure to state a claim upon which relief can be granted. *R.J. Corman Derailment Serv., LLC. vs. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Hence, this Court can only grant Allied's motion if it appears beyond a doubt that the non-movant cannot prove facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved. *Guise vs. BMW Mortgage, LLC.,* 377 F.3d 795, 798 (7th Cir. 2004). The posture of the case and the applicable standard of review makes use of Rule 12(c) difficult here because Allied is the plaintiff seeking a declaration of no insurance coverage. Moreover, cases interpreting Rule 12(c) almost always arise in the context of a defendant seeking judgment on a plaintiff's complaint. Here, the opposite is the case insofar as Allied is the plaintiff. Normally, when ruling upon a 12(c) motion, the court is to accept all facts alleged in the complaint in the light most favorable to the plaintiff, the non-moving party. *Id.* However, here Allied is the movant and its own complaint is at issue. As such, review of this motion pursuant to 12(c) is inappropriate. Rather, the Court should analyze and decide Allied's motion pursuant to Rule 56 for summary judgment. It has long been the rule that the construction of an insurance policy and determination of rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment. *Jupiter Aluminum Corp. vs. The Home Insurance Co.*, 52 F.Supp.2d 885 (N.D. Ill. 1999); *Medline Industries, Inc. vs. Fidelity and Deposit Co. of Maryland*, 1998 U.S. Dist. Lexis 7639 (N.D. Ill. 1998).

Furthermore, some of Cam Golf's defenses to Allied's motion are dependent upon evidence outside of the pleadings which will be gathered in discovery. These defenses, related to the drafting history of the exclusions, demonstrate that the exclusions Allied relies upon are inapplicable. Because Cam Golf has valid defenses to this motion, it should be allowed to

present all the evidence which relates to the issue before the Court. As such, the Court should treat this motion as one for summary judgment. The issue before the Court is really one of policy interpretation. Along these lines, it has long been the practice of Illinois courts to rely upon evidence developed in discovery when interpreting policies. Thus, the Court here should allow the use of all relevant evidence whether the motion is premised upon Rule 12(c) or Rule 56.

### THE DETERMINATION OF THE DUTY TO DEFEND IN ILLINOIS

An insurer's duty to defend is much broader than its duty to indemnify. *Outboard Marine Corp. vs. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 607 N.E.2d 1204 (1992). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within *or potentially within* the insurer's policy. *United States Fidelity & Guaranty Co. vs. Wilkin Insulation Co.*, 144 Ill.2d 64, 578 N.E.2d 926 (1991). A court must compare the allegations in the underlying complaint to the policy language in order to determine whether the insurer's duty to defend has arisen. *Outboard Marine*, 154 Ill.2d at 125. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent. *Dixon Distributing Co. vs. Hanover Ins. Co.*, 161 Ill.2d 433, 641 N.E.2d 395 (1994). Furthermore, the allegations in the underlying complaint must be liberally construed in favor of the insured. *Id.* In addition, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer must defend even if only one of the theories is within the potential coverage of the policy. *United States Fidelity & Guaranty Co.*, 144 Ill.2d at 73.

Where, as here, the carrier seeks to avoid its coverage obligations pursuant to an exclusion within the policy, the court must read the exclusions narrowly and in favor of coverage. *Flodine vs. State Farm Ins. Co.*, 2001 U.S. Dist. Lexis 2204 (N.D. Ill. 2001). Furthermore, in the insurance coverage context, extrinsic facts gathered in the discovery process may be considered in determining whether a duty to defend is owed so long as such facts do not bear upon issues in the underlying litigation. *Atlantic Mutual Ins. Co. vs. American Academy of Orthopedic Surgeons*, 315 Ill.App.3d 552, 567, 734 N.E.2d 50 (Ill.App. 2000).

### THE "KNOWLEDGE OF FALSITY" EXCLUSION DOES NOT OBVIATE THE DUTY TO DEFEND AND IS AMBIGUOUS AS APPLIED TO INTELLECTUAL PROPERTY TORTS

**A.** **The "Offense" Based Coverage Within the Allied Policy Covers Cam Golf for Personal and Advertising Injury**

Allied attempts to obviate its defense and indemnity obligations by incorrectly relying upon the knowledge of falsity exclusion which has no application to intellectual property torts. Furthermore, even if the exclusion could apply to intellectual property torts, the overwhelming majority of courts that have interpreted the exclusion have refused to apply it where, as here, the insured is potentially liable absent any intent. The exclusion reads as follows:

This insurance, including any duty we have to defend "suits" does not apply to:

  a.     "Personal and Advertising Injury:"

                    *       *       *

  2.     *Arising out of oral or written publication of material*, if done by or at the direction of the insured with *knowledge of its falsity* (emphasis supplied).

**B.** **Under Illinois Law The Knowledge Of Falsity Exclusion Cannot Obviate The Duty To Defend Where, As Here, The Insured Faces Liability In The Underlying Action Even If The "Falsity" Is Not Proven**

Under Illinois law, policy exclusions are to be interpreted narrowly against the carrier who drafted them and all ambiguities with respect to the exclusion are to be resolved in favor of the insured. *Outboard Marine Corp. vs. Liberty Mut. Ins. Co, 154 Ill.2d 90, 119, 607 N.E. 1204 (1992).* Furthermore, policy language can be viewed as ambiguous in one of two ways. First, the language itself may be intrinsically unclear, in the sense that the person reading it without the benefit of some extrinsic knowledge simply could not determine what it means. Second, the language, although clear on its face, may become uncertain when applied to a particular object or circumstance. Hence, a policy term may be free from ambiguity when used in one context, but of doubtful application in another context. *American States Ins. Co. v. Koloms,* 177 Ill.2d 472, 687 N.E.2d 72, 481 (Ill. 1997). In either case, all ambiguities are resolved in favor of coverage.

In *Central Mutual Ins. Co. vs. Stunfence, Inc.*, 292 F.Supp.2d 1072 (N.D. Ill. 2003), Judge Shadur, made specific reference to this rule of policy interpretation and refused to apply the knowledge of falsity exclusion to claims made against the insured pursuant to the *Lanam Act. Id.* at 1082. The rule of law resulting from Judge Shadur's opinion is that where the insured

faces liability in the underlying action whether or not the underlying plaintiff proves willfulness or knowledge of falsity, the knowledge of falsity exclusion (and the willfulness exclusion which will be discussed below) cannot apply to obviate the duty to defend. Here, it is undisputed that Cam Golf faces potential liability despite any proof of intent in the underlying action.

Allied attempts to avoid this clear edict of policy interpretation used by Judge Shadur by drawing distinctions without a difference. According to Allied, the underlying complaint in the *Stunfence* case made specific references to Sections 1114(1)(b) and 1114(1)(a) of 15 U.S.C. §1114. Hence, the potential for coverage existed in that case because Section 1114(1)(a) does not require intent for the underlying plaintiff to prevail. Indeed, in the instant case, the underlying action does not specifically refer to §1114(1)(a). However, the very first paragraph of the underlying complaint makes specific reference to the *entire* Act and cites 15 U.S.C. §1114, and 15 U.S.C. §1125. Thus, the entire section and subparagraphs are invoked by the pleadings. Furthermore, the Court should recall that at the status conference of May 23, 2006, the parties discussed in open court the subject of Allied's anticipated motion and its relation to the allegations of "willful and knowing" conduct of Cam Golf.[2] During this discussion, the Court remarked by way of analogy that negligent and even reckless infringement of copyright and trademark are "sort of a lesser included offense" to allegations of willful or knowing conduct. Indeed, the Court's instinct is correct in this regard and virtually every court that has analyzed the knowledge of falsity exclusion has refused to apply it where the insured faces liability for the "lesser included offense" of negligence or recklessness.

### C.    *Allied's Interpretation of its Own Exclusion Is Illogical*

Essentially, Allied argues that it owes Cam Golf no duty to defend or indemnify because the underlying complaint alleges knowing and willful conduct on the part of Cam Golf.[3] This, of course, ignores the distinct possibility that Cam Golf will be subject to liability even if Acushnet fails to prove knowledge and/or willfulness.[4] If the Court were to grant Allied's motion, the

---

[2] Of course, Cam Golf denies all allegations of willful or knowing conduct.

[3] One should observe that every single allegation of intent by Acushnet in the underlying action is qualified by the phrase "upon information and belief."

[4] Indeed, willfulness or intentional conduct is not a necessary element of any of Acushnet's theories of liability against Cam Golf, but merely only entitles them to enhanced damages.

underlying case would proceed to trial. Assuming *arguendo*, that Cam Golf is ultimately found liable for negligent infringement, and not willful infringement, Allied would have escaped its coverage obligations based upon allegations of willfulness that were never proved. At bottom, a general liability policy is litigation insurance which not only protects the insured from indemnification obligations owed to third parties, but also against the costs of, even meritless, litigation. Allied's position cannot be the law of Illinois or any jurisdiction for that matter. The simple fact is Cam Golf faces potential liability for negligent conduct, despite allegations of willful conduct. Under Illinois law, the potential for covered liability is enough to trigger the duty to defend. Along these lines, the underlying complaint provides ample potential liability that Allied must defend.

        **D.**    *The Knowledge of Falsity Exclusion Cannot Bar a Defense For Continuing Torts Such As Alleged Violations of the Lanham Act, Copyright Infringement, Trademark Infringement, Unfair Competition or Deceptive Trade Practices and is ambiguous when applied to same.*

The allegations in the underlying complaint against Cam Golf for alleged violations of Acushnet's intellectual property rights cannot, by definition, be true or "false." In *Hyman vs. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002), the Eleventh Circuit interpreted the "knowledge of falsity" exclusion and observed as follows:

> We recognize, of course, that a court *could* construe the term, "false" to encompass conduct or statements arguably giving rise to a false or misleading impression. Such a definition, however, is significantly broader than one including only direct assertions of untrue facts, and we find it no more plausible.

> As we've discussed, the most common use of the term "false" is to mean "untrue" or failing to correspond to a set of known facts -- not creating a false impression or, maybe, only customer confusion. According to the term the broadest definition would undermine the clear directive...that ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured. In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses.

> Because we must construe the exclusion narrowly and in favor of coverage, we find that [the insured's] actions were not "false" inasmuch as they did not amount to direct assertions of untrue facts. *Id.* at 1196.

In the instant case, Cam Golf is accused of violating Acushnet's copyright, trademark, and trade dress. In what sense, then, are these alleged violations "false"? Certainly, they are not false in the way that an assertion that "the sky is green," or "man is immortal," are patently false. Certainly, those assertions are not false in the same sense as the Nike Swoosh is false as it is applied to goods. Indeed, such applications are incapable of being true or false because they are not statements of fact. It merely identifies the origin of goods. Because the "knowledge of falsity" exclusion is ambiguous when applied to intellectual property rights, it must be read narrowly and against Allied. *See, e.g., Interface, Inc. vs. Standard Fire Ins. Co.,* 2000 W.L. 33194955 (N.D. Ga. 2000) (Holding that the knowledge of falsity exclusion, as a lay person would read it, has nothing to do with copyright infringement nor is it even an element of a claim for copyright infringement); *General Cas. Co. of Illinois vs. Four Seasons Greetings, LLC.,* 2004 Minn.App. Lexis 1457 (MN.App. 2004).

The ambiguity of knowledge of the falsity exclusion is further demonstrated by examining its drafting history. In 1976, ISO, the organization responsible for drafting standard liability forms such as those utilized by Allied, issued a knowledge of falsity exclusion which reads as follows:

This insurance does not apply to:

\*     \*     \*

> 3.     *Personal injury or advertising injury* arising out of *libel* or *slander* or the *publication* or *utterance* of *defamatory* or *disparaging material* concerning any person or organization or goods, products or services, or in violation of an individual's right of privacy, made by or at the direction of the insured with knowledge of the falsity thereof. (emphasis supplied.)

In 1986 the exclusion evolved as follows:

This insurance does not apply to:

> a.     "Advertising Injury" or "Personal Injury"

> > 1.     *Arising out of oral or written publication of material* if done by or at the direction of the insured with knowledge of its falsity (emphasis supplied)

Then, consider the 1986 definition of "advertising injury" offenses to which the exclusion applied:

- 7 -

Advertising injury means...arising solely out of one or more offenses committed in the course of advertising your goods, products or services:

1. *Oral or written publication of advertising material* that slanders or libels a person or organization;

2. *Oral or written publication of advertising material* that violates a person's or organization's right of privacy;

3. Infringement of copyright, titles, slogans, or other advertising materials. (emphasis supplied)[5]

The revision of the standard CGL policy through the years evidences no intent to change of the scope of coverage. Notably, the use of the words "oral or written publication of advertising material" are limited to invasion of privacy and loss of reputation torts. Indeed, the "oral or written publication of advertising material" predicate language does not qualify the policy's coverage for "the use of another's advertising idea in your 'advertisement'" or infringing upon another's "copyright, trade dress or slogan" in your advertisement. Thus, the context of the policy along with its drafting history demonstrate that only those offenses that are preceded by the "oral or written publication of advertising material" language are subject to the knowledge of falsity exclusion. *See, e.g., Irons Home Builders, Inc. v. Auto-Owners Ins.Co.,* 839 F Supp. 1260 (E.D. Mich. 1993) (addressing the analogous "first publication" exclusion, the court held that a liability exclusion for injury arising out of *oral or written publication of material* first published before the policy period only applied to libel, slander and invasion of privacy, and not to ongoing torts such as copyright infringement claims); *Curtis Universal, Inc. v. Sheboygan Emergency Med. Serv., Inc.,* 43 F.3d 1119 (7th Cir. 1994) (holding that the knowledge of falsity exclusion was inapplicable to the tort of "unfair competition" because underlying plaintiffs would not have to prove dissemination of false information was made knowingly to prevail on its claim).

**F.   *Allied's Interpretation of the Knowledge of Falsity Exclusion Advances an Extreme Minority Position.***

---

[5] Allied's policy in the instant case utilizes the 1998 coverage form which contains a definition of "personal and advertising injury" which still includes the offenses "oral or written publication or material that slanders or libels" and "oral or written publication of material that violates a person's right of privacy."

The overwhelming majority of cases cited by Allied for the application of the "knowledge of falsity exclusion" arise in the context of defamatory statements made by the insured. Such cases are distinguishable and completely inapplicable to the instant case where the insured is sued for intellectual property torts. Indeed, the knowledge of falsity exclusion was drafted specifically for defamation actions and are of no use to the Court here. Hence, the overwhelming majority of authority cited by Allied is irrelevant.

Significantly, the two cases cited by Allied which applied the knowledge of falsity exclusion in the intellectual property context only applied it after a full blown evidentiary hearing in the underlying matter or trial on the merits. See, *A. J. Sheepskin & Leather Co., Inc. v. Colonia Ins. Co.,* 273 A.D.2d 107, 709 N.Y.S. 2d 82 (2000); *Atlantic Mut. Ins. Co., v. Terk Technologies Corp.,* 309 A.D. 2d 22, 763 N.Y.S.2d 56 (2003) In both cases, the fact finder decided that the insured acted intentionally with respect to the alleged infringement. In the instant case, there has been no such finding and in any event, *Terk* has not even been followed in New York and has otherwise been criticized by other courts. *See, Massena v. Healthcare Underwriters Mut. Ins. Co.,* 98 N.Y. 2d 435 (2002) (the highest court in New York held that statements made with "reckless disregard for the truth" do not fall within the knowledge of falsity exclusion and therefore a defense is owed); *General Cas. Co. of Illinois v. Four Seasons Greetings, LLC,* 2004 Minn.App. Lexis 1457 (Mn. App. 2004) (observing that *A. J. Sheepskin* is merely a memorandum opinion that presents little or nothing by way of pertinent facts).

In apparent reliance upon *Terk,* 309 A.D. 2d 22, Allied argues that it is "impossible to envision" how Cam Golf could have unknowingly and unintentionally marketed allegedly counterfeit products. On the contrary, it is simple to conceive. In *Terk,* the insured contacted a local manufacturer and **specifically requested that it produce a cheaper, low quality knock-off** goods and then marketed the counterfeit product. Here, Cam Golf did nothing of the kind and there is no allegation that Cam Golf approached or requested from any wholesaler a lower quality knock-off good. Hence it is easy to conceive how Cam Golf could have unintentionally marketed an allegedly counterfeit product. For example, since Cam Golf neither approached nor requested a knock-off good, it is possible under the pleadings of the underlying action that Cam Golf unknowingly received knock-off goods from a wholesaler and put them into the stream of commerce. *Terk* is factually inapposite to the instant case.

Furthermore, as part of its poorly reasoned rationale the *Terk* court relied upon the application of other intentional conduct exclusions as applied in contexts quite different from intellectual property torts. For example, the *Terk* court relied upon cases finding no coverage for violent sexual assault and child molestation. *Terk* 309 A.D. 2d at 31. The application of such intentional conduct exclusions makes sense in these contexts where it is "impossible to envision" how one could negligently molest a child or negligently sexually assault a person by force and violent means. Intentional conduct exclusions were drafted specifically for such situations and they simply do not apply where the insured can be held liable through mere negligence. In fact, almost every court that has analyzed the knowledge of falsity in the intellectual property context has expressly found that it may not bar the duty to defend.[6]

### THE KNOWLEDGE OF VIOLATION EXCLUSION DOES NOT APPLY

#### A.     The Knowledge of Violation Exclusion and Its History

The Allied policy contains the standard knowledge of violation exclusion which reads as follows:

This insurance, including any duty we have to defend "suits", does not apply to:

a.       "Personal and advertising injury:"

> Caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury;"

---

[6]   *Ekco Group, Inc. v. Travelers Indem. Co. of Ill.* 2000 U.S. Dist. Lexis 17702 (D.N.H. 2000) (holding the knowledge of falsity exclusion does not apply in the context of trade dress infringement that does not arise from either oral or written publication. Additionally, since an action for trade dress infringement does not include a scienter element, liability may not arise from negligent or reckless conduct.); *Massachusetts Bay Ins. Co., v. Penny Preville, Inc.* 1996 U.S. Dist. Lexis 9671 (S.D.N.Y. 1996) (since it is possible that the insured can be found liable for infringement of copyright without being found to have acted knowingly, willfully or intentionally, the carrier is unable to demonstrate the application of the exclusion); *Federal Ins. Co. v. Cablevision Sys. Dev. Co.*, 637 F Supp. 1568 (E.D.N.Y. 1986); *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y. 2d 435 (2002) (statements made with reckless disregard for truth not within exclusion and defense for same is compelled); *Curtis-Universal, Inc. v. Sheboygan Emergency Med.* 43 F 3d 1119 (7th Cir. 1994) (holding the knowledge of falsity exclusion was inapplicable to the tort of unfair competition because plaintiffs would not have to prove the dissemination of false information was made knowingly.); *Noland & Co. Graphics & Adver., Inc. v. Liberty Mut. Fire. Ins. Co.*, 1993 U.S. Dist. Lexis 3884 (N.D.Ill. 1993); *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Inc., Co.*, 165 F Supp. 2d 1332 (S.D. Fla. 2001); *Finger Furniture Co., Inc. v. Travelers Ind. Co. of Conn.*, 2002 U.S. Dist. Lexis 15351 (S.D. Tx. 2002) ("It is well settled that in the absence of an express finding that the insured published an advertisement with "knowledge of its falsity," the exclusion "is unlikely to bar coverage except where the allegations of the underlying complaint are worded so a finding of willfulness is necessary for the insured to be held liable." Citing, 5 J. Thomas McCarthy, Trademarks and Unfair Competition Sec. 33:16 (4th Ed. 2002)); *Day Electric Supply, Inc. v. The Travelers Lloyds Ins. Co.*, 61 F Supp. 2d 611 (S.D. Tx. 1999).

In 2001, ISO, the trade organization that drafts standard insurance policies adopted this new exclusion to its "personal and advertising injury" coverage. The addition of this exclusion further highlights the ambiguity of the "knowledge of falsity" exclusion and is most certainly a reaction to the line of cases deciding that "knowledge of falsity" cannot apply to intellectual property torts. However, adoption of the new "knowledge of violation" exclusion still cannot obviate coverage where the insured faces potential liability for a negligent or unknowing violation.

**B. In Illinois, the Knowledge of Violation Exclusion Does Not Apply Where Intent is Not a Necessary Element of the Underlying Claim**

In *Central Mut. Ins. Co., v. Stunfence, Inc.,* 292 F.Supp. 2d 1072 (N.D. Ill. 2003), Judge Shadur specifically rejected the argument proffered here by Allied and found ample potential for coverage wherever the insured is potentially liable despite proof of intentional or willful conduct. In analyzing the knowledge of violation exclusion Judge Shadur reasoned:

> [T]he quoted exclusions do not negate *Central's* duty to defend . . . 15 U.S.C. § 1114...does not uniformly require that infringement be committed with knowledge . . . To recover under either § 1114 (1)(a) or 15 U.S.C. § 1125 (a), a plaintiff need demonstrate only that defendant's use of a registered mark caused actual confusion, resulting in actual injury to plaintiff . . . Gallagher's assertions of intentional and willful conduct on the part of Stunfence need not have been proved for Gallagher to recover damages for trademark infringement - - and that being so, the exclusions do not apply. *Id.* at 1081.

Similarly, in *Westfield Cos. v. O.K.L. Can. Line,* 155 Ohio App.3d 747, 804 N.E.2d 45 (2003) the court of appeals of Ohio specifically rejected the application of the knowing violation exclusion because, "Alco could have prevailed on the *Lanham Act* or the common-law trade-dress infringement claim without proving intentional or knowing infringement. Proof of intent is required only to justify a request for enhanced damages and attorneys' fees. The exclusion, therefore, did not apply under the facts of this case." *Id.* at 757.

In the instant case, Cam Golf faces liability for alleged copyright, trademark, trade-dress, and various common-law deceptive trade practice and unfair competition claims. None of these theories require intent or willfulness on the part of Cam Golf for Acushnet to prevail. As such, despite any allegations of willful conduct in the underlying action, Cam Golf faces liability

notwithstanding proof of the allegations. Thus, there is a potential for coverage and a duty to defend.

In *Ohio Cas. Ins. Co. v. Albers Medical Inc.*, 2005 WL 2319820 (W.D. Mo. 2005), the Western District of Missouri refused to apply the knowledge of violation exclusion in circumstances identical to the instant case. There, the insured was sued for trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114(1) and false designation of origin. All the counts alleged that the insured acted willfully and deliberately. The court held:

> Plaintiffs' second theory posits the Pfizer Action "alleges only intentional wrongdoing." It is true the Pfizer Action alleged intentional wrongdoing; it is not true that it alleges *only* intentional wrongdoing. Pfizer's claims do not depend on a showing of intentional wrongdoing. Stated another way, intent is not an element Pfizer must prove in order to prevail in the Pfizer Action. A showing of intentional wrongdoing may be necessary to entitle Pfizer to certain types of relief, but its not a necessary component of its claim. *Id.* at 5.

One could simply substitute the names of the parties in the instant case to achieve the correct result as obtained by the court in *Albers Medical*.

### C. Allied's Reliance Upon Educational Training Systems is Misplaced.

Allied relies upon *Educational Training Systems, Inc. v. Monroe Guaranty Ins. Co.*, 129 S.W.3d 850, 2003 Ky. App. Lexis 197 (Ky. Ct. App. 2003), for the proposition that the knowledge of violation exclusion should bar the duty to defend here. However, the facts of *Educational Training Systems* are inapposite to the instant case. First, the court applied the exclusion notwithstanding the *potential* for coverage and instead examined a piece of evidence in the underlying case which the court said "plainly illustrates Earl Weikel's intent to harm ETS through the deliberate use of the Weikel name." *Id.* at 852. Based upon this piece of extrinsic evidence, the court concluded that "[T]he actor knew of the trademark, knew that his use of the trademark would cause confusion (as evidenced by the statement "a competing school . . . would profit greatly with WEIKEL as part of its name") and knew that harm would result from his intended act." *Id.* at 853.

The court, then, imputed to the insured the missing subjective knowledge that the conduct itself was in violation of federal law because "it is axiomatic that all persons are presumed to know the law." *Id.*

This decision is poorly reasoned insofar as a defense obligation is based on any potentiality to which the exclusion may not apply. In *Educational Training Systems*, the court improperly reasoned from the ultimate adjudication in deducing what facts were necessarily known by the insured, rather than the allegations in the complaint.

Here, in the context of Allied's motion for judgment on the pleadings, Allied has presented no direct evidence that "plainly illustrates" Cam Golf's intent to harm. In fact, no evidence has been offered or been deduced in the underlying action whatsoever. As such, the *Educational Training Systems* decision is of no use in deciding the instant case.

### THE NONCONFORMING GOODS EXCLUSION APPLIES TO CLAIMS OF QUALITY AND PERFORMANCE AND NOT CLAIMS OF FALSE ORIGIN

#### A. The Nonconforming Goods Exclusion Does Not Apply To Infringement Of Intellectual Property Rights

The Allied policy contains a nonconforming goods exclusion which precludes coverage for "personal and advertising injury" arising out of the "failure of goods, products or services to conform to any statement of quality or performance mad in [the insured's] advertisement."

In order to exclude coverage based on the exclusion for the failure of goods to conform, the insurance carrier has the burden of demonstrating that the allegations against the policyholder specifically reference the failure of a policyholder's goods to rise to the level advertised. *DecisionOne Corp. v. ITT Hartford Ins. Group*, 942 F.Supp. 1038, 1043 (E.D. Pa. 1996). In other words, the underlying complaint must contain specific allegations that the policyholder's goods fail to conform to the quality or performance advertised. *Flodine v. State Farm Ins. Co.*, 2001 U.S. Dist. Lexis 2204 at 39-40 (N.D. Ill. 2001). It is not enough that the policyholder makes misleading statements or false comparisons with another product. *Poof Toy Prods., Inc. v. United States Fidelity and Guar. Co.*, 891 F.Supp. 1228 (E.D. Mich. 1995).

In *Flodine*, 2001 U.S. Dist. Lexis 2204, the Northern District of Illinois considered the nonconforming goods exclusion against claims of misappropriation of advertising idea and style of doing business. In discussing the language of the exclusion, the court held as follows:

> When read in the context of the entire sentence, "quality" has the more specific meaning of "excellence;" this exclusion bars coverage for claims arising out of the failure of the insured's products to perform as well as advertised. Though trademarks and/or designations of authenticity can be indicators of quality (in the sense of excellence) to consumers, they are

> primarily concerned with identifying the source or origin of goods, not
> how well the goods will perform . . . the court declines State Farm's
> invitation to interpret this exclusion generously; the court must read
> exclusions narrowly to avoid interfering with the insured's expectation of
> coverage. *Id.* at 40.

Hence, the *Flodine* court makes clear that the nonconforming goods exclusion applies to claims of quality in advertising and not claims of origin. In the instant case, there are no allegations that Cam Golf made any representations as to the quality of goods sold. Rather, Acushnet's claim is limited to claims of origin and that consumer confusion may well result. Thus, in order to determine whether the conforming goods exclusion applies, the Court must analyze the **nature of the injury** claimed in the underlying action.

Similarly, in *Edwards Theatres, Inc. v. United National Insurance Company,* 126 Fed. Appx. 831, 2005 U.S. App. Lexis 4667 (9th Cir. 2005), the Ninth Circuit interpreted the nonconforming goods exclusion in the context of trademark infringement. The court correctly observed:

> Coverage was not barred by the policy clause excluding injuries arising
> from the failure of goods to meet their advertised quality. IMAX had a
> potential cause of action simply by establishing that *Edwards* exploited its
> identity and goodwill in its advertisements; the quality of goods that
> *Edwards* was selling was irrelevant to that claim. *Id.* at 833.

### B. Allied's Reliance upon *Skylink Technologies* and *Super Performance International* is Misplaced.

Allied's motion relies upon the Seventh Circuit's decision in *Skylink Technologies, Inc. v. Assurance Company of America,* 400 F 3d 982 (7th Cir. 2005) and the Eastern District of Virginia's decision in *Superperformance International Inc. v. Hartford Cas. Ins. Co.,* 203 F Supp.2d 587 (E.D. Vir. 2002) for the proposition that the nonconforming goods exclusion bars a duty to defend in the instant case. Both decisions are distinguishable from the instant case insofar as they apply to underlying claims of "false advertising" or are otherwise predicated on claims of performance, none of which exist in the instant case.

In *Skylink Technologies,* the insured sold universal transmitters and keypads that operate several brands of garage door openers including those made by the Chamberlain Group ("Chamberlain"). *Skylink,* 400 F.3d 982 at 983. The Chamberlain garage door openers

implement a "rolling code" technology that changes the transmitted code every time a garage door is opened. The rolling code technology is an advanced security measure to prevent burglars from opening a garage door. *Id.* Skylink *claimed in its advertising* to sell a transmitter which was compatible with Chamberlain's rolling code technology. However, although the Skylink garage door openers would open a Chamberlain door, the Skylink transmitter would not use a different code each time, thus negating Chamberlain's security feature. *Id.*

Under these circumstances, the Seventh Circuit applied the nonconforming goods exclusion only after analyzing the nature of the complaint made in the underlying action. Specifically, the court observed:

> What Skylink is really saying, however, is that Chamberlain is complaining that Skylink's products do not live up to the promise of compatibility or, put differently, that Skylink's products fail to conform with the statement of performance on its package - - an injury explicitly excluded under the Skylink – Assurance contract. *Id.* at 984-85.

Thus, it is clear that the nonconforming goods exclusion only applies to false statements of advertising related to a products quality and/or performance. The same analysis was utilized by the court in *Superperformance International Inc. v. Hartford Cas. Ins. Co.,* 203 F Supp. 2d 587 (E.D. Vir. 2002), where the court noted *misleading statements in advertising* that the insured's products were "equivalent to the vehicles produced by Shelby." *Id.* at 598.

In the instant case, there is no statement of quality or performance attributed to Cam Golf. On the contrary, the **nature of the injury** claimed by Acushnet is merely the product's origin. Moreover, in every instance where the conformity of goods exclusion has been analyzed, the court refused to apply it where the nature of the injury relates to origin. As such, the exclusion cannot apply here and Allied's motion must be denied.

WHEREFORE, Cam Golf prays for an order denying Allied's motion on the pleadings with prejudice and a finding that the exclusions cited therein do not preclude the duty to defend.

Respectfully submitted this 5th day of October, 2006.

CAM GOLF, INC.

By:_____ */s/ Peter R. Ryndak*_____
Peter R. Ryndak

William V. Johnson, Esq.
Daniel C. Murray, Esq.
Peter R. Ryndak, Esq.
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603-5404
(312) 372-0770

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that *Cam Golf's Opposition To Plaintiff's Motion For Judgment On The Pleadings & Memorandum In Support of Its Cross Motion For Summary Judgment on the Exclusions* was served by operation of the Court's electronic filing system upon CM/ECF registered counsel, on **October 5, 2006**.


_____/s/ Betty L. Johnson_____